# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JON STRUNA,

    Plaintiff,

vs.
                                                  CASE NO. 8:11-cv-1515-T-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER AND OPINION

This case is before the Court on Plaintiff's complaint (Doc. #1). Plaintiff seeks review of the final decision of the Commissioner of Social Security that denied Plaintiff's claims for disability insurance benefits (DIB) and supplemental social security income (SSI) disability payments. This Court has authority to conduct the requested review. 42 U.S.C. § 405(g).

Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #19, Plaintiff's Brief). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #21, Defendant's Brief). The Commissioner has filed the transcript of the underlying administrative proceedings and evidentiary record (hereinafter referred to as "Tr." followed by the appropriate page number). Both parties consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to a magistrate by the Order of Reference dated September 19, 2011 (Doc. #14). The case was reassigned to the undersigned on February 24, 2012 (Doc. #20).

Upon review of the record in its entirety, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in making its

determinations. Accordingly, the matter has been decided on the written record. For the reasons set out herein, the Commissioner's decision is **AFFIRMED.**

## PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI with the Social Security Administration on April 22, 2008 (Tr. 138-44). Plaintiff alleged a disability onset date of January 31, 2008 (Tr. 138, 141). In an undated Disability Report-Adult, Plaintiff alleged he was unable to work due to a heart attack, degenerative disc disease, anxiety, and high blood pressure (Tr. 158).

The DIB and SSI applications were denied initially and upon reconsideration. An administrative hearing was held on August 16, 2010 in Tampa, Florida before Administrative Law Judge (ALJ) Michael S. Maram (Tr. 25-50). Plaintiff appeared and testified at the hearing, as did vocational expert (VE) William Harvey (Tr. 28, 46-49). Plaintiff was represented at the administrative hearing by a non-attorney representative, Ms. Raquel Asuncion (Tr. 25, 121-22).

ALJ Maram issued the decision denying Plaintiff's claims on September 23, 2010 (Tr. 9-19). Plaintiff requested review of the hearing decision by the Appeals Council, but the request was denied (Tr. 1-3). Thus, the ALJ's decision became the final decision of the Commissioner. Thereafter, Plaintiff's legal counsel, Mr. Michael E. Steinberg, Esq., filed the instant complaint in federal court on July 8, 2011.

## SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION, AND THE STANDARD OF REVIEW

A plaintiff is entitled to disability benefits under the Social Security Act only when he or she is unable to engage in substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A), 20 C.F.R. § 404.1505.[1] For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits. *Patterson v. Bowen*, 799 F.2d 1455, 1456, n.1 (11th Cir. 1986). The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through step four, while at step five the burden temporarily shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the January 31, 2008 alleged onset date of disability (Tr. 14). ALJ Maram found Plaintiff met the insured status requirements for DIB under the Social Security Act through December 31, 2011 (Tr. 14). At step two, the ALJ found Plaintiff had the severe impairments of degenerative disc disease of the lumber spine, coronary artery disease and anxiety disorder (Tr. 14). At step three, the ALJ found Plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15).

The ALJ next determined that Plaintiff had the residual functional capacity (RFC) to

---

[1]Unless otherwise specified, all references to 20 C.F.R. will be to the 2011 edition. As the Regulations for SSI disability payments mirror those set forth for DIB on the matters presented in this case, from this point forward the Court may refer only to those sections in 20 C.F.R. pertaining to part 404 and disability insurance benefits.

perform light work, "except that he is to have the option to alternate at will between sitting and standing; he is to avoid climbing, commercial driving, exposure to unprotected heights or repetitive bending or stooping; he is to work in a temperature-controlled, non-production environment; he is restricted to simple, routine, repetitive tasks; and he is to avoid interaction with the general public" (Tr. 16). At step four, the ALJ determined Plaintiff could not perform any of his past relevant work (Tr. 18). However, relying in part on vocational expert testimony, the ALJ determined at step five that there were other jobs with sufficient available positions that Plaintiff could perform (Tr. 18). Thus, the ALJ determined Plaintiff was not disabled within the meaning of the Social Security Act from Plaintiff's alleged onset date through the date of the decision (Tr. 19).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence is comprised of relevant evidence that a reasonable person would accept as adequate to support a conclusion. *Foote*, 67 F.3d at 1560; *Moore*, 405 F.3d at 1211.

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*,

932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Serv's.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

In all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove the existence of disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

## BACKGROUND AND ANALYSIS

Plaintiff, Jon Struna, was born on November 26, 1956 (Tr. 138). Therefore, he was

fifty-three (53) years old on the date of the ALJ's decision.  Plaintiff completed the sixth or seventh grade (Tr. 31,162).  Plaintiff has past relevant work as a janitor/maintenance worker and construction laborer (Tr. 30, 34, 159).  Plaintiff raises one issue on appeal.  Plaintiff argues the ALJ erred by relying on answers by a vocational expert to a hypothetical question which did not include all of Plaintiff's limitations.  *See* Plaintiff's Brief at 5.

The Court has reviewed the record in its entirety, including the arguments of the parties in their briefs and the underlying administrative record containing the evidence before the ALJ.  The Court finds the ALJ's decision is supported by substantial evidence and Plaintiff has not identified any reversible error.  Accordingly, the decision will be affirmed.

### ***The Residual Functional Capacity Assessment***

The residual functional capacity, or "RFC," is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite the claimant's impairments.  20 C.F.R. § 404.1545.  The Eleventh Circuit has noted that the focus of an RFC assessment is on the doctors' evaluations of a claimant's condition and the resulting medical consequences.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

In making the RFC determination in this case, the ALJ noted and considered the medical evidence, including the records from Plaintiff's primary treating physician, Dr. Jatin Sheth (*see* Tr. 14).  According to Dr. Sheth's records, he treated Plaintiff between April 17, 2008 and March 15, 2010 (Tr. 388-403).  The ALJ acknowledged the two year treating relationship with Dr. Sheth, who monitored, treated and assessed Plaintiff's complaints during that time (Tr. 14-15; *see also* Tr. 388-403).  Dr. Sheth followed-up with Plaintiff after a hospitalization in December 2009 (Tr. 14, 531-39).  The ALJ noted Plaintiff's several-year

history of chronic lower back pain (Tr. 14), for which Plaintiff underwent pain management treatment from approximately 2001 through 2005, and monitoring by magnetic resonance imaging (MRI) (Tr. 14, 241-274).  The MRI on June 12, 2001 revealed severe multilevel degenerative disc disease and anterior spondylosis, which the ALJ acknowledged (Tr 14, 254).

The ALJ also accounted for reports throughout the record that Plaintiff had a myocardial infarction in 1997 (Tr. 14; *see also* Tr. 33-34 (Plaintiff's testimony about a heart attack at age 40), Tr. 172-74 (Plaintiff's completion of Division of Disability Determinations form M-44C on heart conditions)).  The ALJ noted that subsequent evaluations of chest pain precluded further heart abnormalities, with the exception of a systolic murmur discovered during a consultative examination by Dr. Andrew Rutherford, M.D., on June 28, 2008 (Tr. 15; *see also* Tr. 280-86, 344-57, 545).

The ALJ acknowledged evidence that the Plaintiff's complaints of chest pain may have been caused by panic disorder, as was noted by the consultative examiner, Dr. Billie Jo Hatton, Ph.D. on June 19, 2008 (Tr. 14-15, 275-79).  Dr. Hatton, a licensed psychologist, diagnosed Plaintiff had a panic disorder without agoraphobia, and noted possible borderline intellectual functioning (Tr. 275-79).  On the day of the examination, Dr. Hatton found Plaintiff had a global assessment of functioning (GAF)[2] of 65 (Tr. 279).  In the

---

[2]The Global Assessment of Functioning Scale (GAF) was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100.  A GAF score of 41-50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school functioning."  A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning.  A GAF score of 61-70 indicates "some mild symptoms," but generally functioning "pretty well, has some meaningful interpersonal relationships."  A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions

Psychiatric Review Technique reports completed by reviewing psychologists Drs. Jill Rowan and Sharon Ames-Dennard, both found the record supported the diagnosis of a panic disorder (*see* Tr. 296-308, 330-343).

On November 12, 2008, Dr. Rowan also completed a Mental Residual Functional Capacity Assessment and rendered the following opinion:

> A. [Plaintiff's] comprehension and memory appear adequate for simple RRT's [or routine repetitive tasks]. B. [Plaintiff's attention and concentration] appear compromised. He, however, appears capable of maintaining an adequate amount of [concentration, persistence, and pace] to fulfill obligations in [a] work setting that requires simple skills. C. [Plaintiff] appears to have adequate social skills to perform in a work setting the majority of the time as objective evidence described [Plaintiff] as friendly and sociable. D. [Plaintiff] appears capable of adjusting to simple changes in a work setting that are introduced gradually over time.

(Tr. 328).

Reviewing the physical side of Plaintiff's impairments, on November 12, 2008, Dr. Efren Baltazar, M.D., a consulting state agency physician, completed a Physical Residual Functional Capacity Assessment and found Plaintiff could: (1) occasionally lift or carry up to twenty pounds; (2) frequently lift or carry up to ten pounds; (3) stand or walk about six hours, with normal breaks, during an eight hour workday; (4) sit for a total of about six hours, with normal breaks, during an eight hour workday; and (5) has an unlimited push or pull capability (Tr. 318-25). He also ascertained Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl (Tr. 320). Dr. Baltazar noted that Plaintiff's symptoms appeared credible and related to a medically determinable impairment,

---

to psycho-social stressors with no more than slight impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc. 2000).

but added, "with available objective findings, [Plaintiff] appears to be capable of performing activities within the parameters of this RFC [assessment]" (Tr. 323).

In August 2008, reviewing physician, Dr. James Andriole, D.O., found Plaintiff could occasionally lift fifty pounds and could frequently lift twenty-five pounds (Tr. 311). Except for determining Plaintiff should never climb ladders, ropes or scaffolds, the remainder of Dr. Andriole's findings are consistent with those of Dr. Baltazar (compare Tr. 310-17 with Tr. 318-25).

The ALJ's decision demonstrates he considered and weighed the medical opinion evidence and other evidence of record in assessing Plaintiff's RFC and finding Plaintiff was not disabled under the Social Security Act (*see* Tr. 14-17). In doing so, he stated, "Having viewed the evidence in the light most favorable to the claimant, the undersigned has given great weight to the more restrictive physical assessment and great weight to the mental assessment of Dr. Hatton, the consultative examiner" (Tr. 17).

ALJ Maram found Plaintiff could perform light work, "except that he is to have the option to alternate at will between sitting and standing; he is to avoid climbing, commercial driving, exposure to unprotected heights or repetitive bending or stooping; he is to work in a temperature-controlled, non-production environment; he is restricted to simple, routine, repetitive tasks; and he is to avoid interaction with the general public" (Tr. 16). The Court finds substantial evidence supports the RFC determination. Plaintiff does not attack the RFC *per se*, but rather attacks the hypothetical question that formed the basis for the VE's opinion testimony as differing significantly from the RFC. As stated below, the Court finds this argument is without merit.

## *Work Restrictions as Stated in the RFC and the Hypothetical Question*

It is well established in the Eleventh Circuit that when a vocational expert is utilized at the fifth step in the sequential evaluation process, the hypothetical questions posed must include all impairments of the particular claimant/plaintiff. *Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985). Therefore, the Court must determine whether the ALJ failed to include any limitations resulting from Plaintiff's severe impairments in the hypothetical question that formed the basis of the VE's testimony, and if so, whether such failure constitutes grounds for reversal. "Hypothetical questions adequately account for a claimant's limitations ... when the questions *otherwise implicitly account* for them." *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 903 (11th Cir. 2012) (emphasis added).[3] The Court may affirm the ALJ's opinion when "the ALJ's hypothetical to the VE properly comprised, expressly or by implication, all of [the Plaintiff's] impairments, and the VE's answer constituted substantial evidence that [the Plaintiff] could perform work in the national economy." *Id*. If the ALJ had "asked the vocational expert a hypothetical question that failed to include or otherwise implicitly account for all of [the Plaintiff's] impairments, the vocational expert's testimony," would not be substantial evidence for a disability determination. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011). The ALJ, however, is not required to include in the hypothetical question the non-severe impairments, or the limitations that were properly rejected as unsupported. *See Crawford*

---

[3]Unpublished opinions may be cited throughout this order as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

*v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1161 (11th Cir. 2004)*; McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987); *Loveless v. Massanari,* 136 F.Supp.2d 1245, 1250-51 (M.D. Ala. 2001).

At the August 16, 2010 administrative hearing, vocational expert William Harvey testified (Tr. 46-49). The VE was present throughout the entire hearing, heard the Plaintiff's testimony, was sworn in prior to giving testimony (Tr. 27, 46). ALJ Maram specifically asked VE Harvey if he had been at the hearing since the beginning and had heard and understood the testimony (Tr. 46). VE Harvey responded in the affirmative. *Id.* ALJ Maram then referred back to his questioning of Plaintiff by asking VE Harvey if the "hypothetical that I presented to the claimant during testimony essentially provided for a restrictive range of light work activities. . ." (Tr. 47). Again, the VE responded affirmatively. *Id.* At which point, the ALJ further detailed the operative hypothetical question by stating:

> The hypothetical provided for both a exertional as well as non-exertional limitations. The exertional limitations included the need to alternate sitting and standing. There were environmental limitations precluding exposure to temperature extremes. I'm going to add gases or fumes or other toxins or pollutants. Non-exertionally, the claimant would be precluded from complex and detailed job tasks but permitted to perform simple, routine, repetitive tasks embraced by the unskilled and lowest and semi-skilled occupational base. And finally, the claimant would have a moderate socialization deficit that would preclude jobs other than those considered vocationally as low stress. And low stress, for the purposes of your analysis, would include the absence of public contact or stringent production goals or time targets.

(Tr. 47-48.) Upon inquiry if he needed further clarification, the VE responded, "No, thank you" (Tr. 48).

When stating the hypothetical question to the Plaintiff, the ALJ detailed:

11

> This job would require you to lift no more than 20 pounds on occasion. Occasionally would be about one third of an eight-hour workday. And frequently, or two-thirds of a, of an eight-hour workday, you'd be lifting less than 20 pounds. The job would allow you to work either in a sitting position or in a standing position or alternating between the two. In other words, you could sit for as long as you want and then stand and vice-versa, stand for as long as you want and then sit. The job would not require you to do any repetitive bending, no repetitive stooping, no climbing, no working at heights, no driving. Job would be indoors so you would not be exposed to any type of temperature extremes, either hot or cold. It would be a temperature-controlled environment such as you're in right now. ... The job would not involve any type of complicated or detailed job tasks. It'd be primarily simple, routine, repetitive type duties. And finally, and very important in your case, the job would be considered vocationally as a low-stress job. And the reason it would be low-stress would be for the following reasons. Number one, you'd have no contact with the public. And secondly, there'd be no stringent production goals or time targets. It'd be a job that you could do more at your own pace. ... What I'm talking about is an eight-hour a day job, five days a week, with breaks of about 15 minutes each in the morning and the afternoon and another break between 30 and 60 minutes at the meal hour.

(Tr. 44-45). The ALJ had directed Plaintiff to listen very carefully to the requirements of the job as he described it and to ask questions or have the ALJ repeat anything he did not understand (Tr. 44). With this understanding, Plaintiff initially stated he could do such a job as the ALJ described (Tr. 45). These hypothetical details, as well as those set forth specifically to the VE, were before the VE when he responded to the ALJ's inquiries.

Plaintiff's counsel argues that certain phrasing used in the RFC was not used in the hypothetical given the VE and that the inconsistencies create a reversible error. According to Plaintiff's argument, the ALJ's hypothetical mentioned the phrase, "precluding exposure to temperature extremes," while the RFC determination used the phrase, "temperature-controlled environment" in describing the environmental restrictions under which Plaintiff could work. *See* Plaintiff's Brief at 6-7. Plaintiff claims the difference in phrasing is significant to the VE's response. *Id.* Plaintiff additionally argues the ALJ's terminology in

12

the hypothetical of restricting the individual from a job with "stringent production goals or time targets" runs afoul Plaintiff's RFC that limits Plaintiff to a "non-production environment." *Id.*

The Southern District of Ohio rejected substantially same argument regarding different phrasing in the RFC and the hypothetical question on an individual's restriction from work with productivity quotas. See *Deaton v. Astrue*, No. 1:10-CV-00461, 2011 WL 4064028 (S.D. Ohio Sept. 13, 2011). In *Deaton*, "the VE was asked ... to consider a person who could lift ten pounds frequently, and a person who was limited to jobs with no strict production quotas." *Id.* at *5. Deaton's residual functional capacity determination limited him to work with "no production quotas or fast-paced jobs." *Id.* at *1. The court in *Deaton* found there was "no significant difference between a restriction against 'production quotas,' and a restriction against 'strict production quotas.' Clearly any reference to a quota means a number that must be met, and so these references are essentially the same in meaning. There is no error in the hypothetical question posed to the VE that calls into question the ultimate conclusion that Plaintiff can perform a reduced range of light work." *Id.* at *5. This Court finds the logic in *Deaton* applies with equal force to this case. There is no significant difference between having no stringent production goals or time targets and a non-production environment.

In *Seever v. Barnhart*, 188 Fed. Appx. 747 (10th Cir. 2006), the court addressed a similar situation when the hypothetical question did not precisely match the claimant's RFC determination. In *Seever*, the ALJ's operative hypothetical described an individual with "moderate limitation in his abilities to interact with co-workers and to respond to work pressures," but the plaintiff's RFC limited the plaintiff to performing light work "where there

is no direct contact ... with co-workers." *Id.* at 750-51. Plaintiff argued the failure to discuss "the work-pressures opinion" in the ALJ's written decision, and hence the RFC, was reversible error. *Id.* The court disagreed and found that the ALJ had committed "at most harmless error." *Id.* at 752.

Although Plaintiff attempts to distinguish the ALJ's finding of Plaintiff's RFC from the work limitations stated in the hypothetical question posed to the VE, such distinction is without meaning. In his written decision, the ALJ found Plaintiff retained the capacity to work in a temperature-controlled, non-production environment (Tr. 16). In describing these same limitations to Plaintiff during the hearing, the ALJ stated the job would be "in a temperature controlled environment such as you're in right now ... [and] there'd be no stringent production goals or time targets; ...[i]t'd be a job that you could do more at your own pace" (Tr. 44-45). Having heard the ALJ's description to Plaintiff, the ALJ recounted his description of the hypothetical restrictions when addressing the VE by stating, "There were environmental limitations precluding exposure to temperature extremes ... [a]nd low stress for the purpose of your analysis would include the absence of public contact or stringent production goals or time targets" (Tr. 47-48). The Court does not find a significant inconsistency between the RFC stated in the ALJ's written decision and the hypothetical questions posited to the VE and Plaintiff during the hearing. The differences Plaintiff highlights in his brief are more a matter of semantics than true distinction. It is sufficient that "the ALJ's hypothetical questions closely tracked his written RFC finding." *See Hodge v. Astrue*, No. 3:10-cv-1419, 2012 WL 589984, at *19 (S.D.W. Va. Feb. 22, 2012) (finding hypothetical questions that "closely track" the RFC finding accurately present all of the claimant's severe impairments). Verbatim recitation of the claimant's RFC assessment is

not required to accurately portray all of a claimant's severe impairments in the hypothetical questions presented to the vocational expert. *See Forrester v. Comm'r of Soc. Sec.*, 455 Fed. Appx. at 903 (a claimant's limitations may be implicitly accounted for in the hypothetical questions).

In sum, the Court finds the hypothetical questions in this case adequately addressed work limitations that are congruent with Plaintiff's vocational profile and severe impairments. Plaintiff's arguments to the contrary are without merit. Having heard the ALJ restrict an individual, among other things, to work without stringent production goals or time targets in a temperature controlled environment with absence of public contact, the VE identified jobs in the national economy that Plaintiff could perform. Having posed a proper hypothetical question, the VE's testimony in response constitutes substantial evidence to support the ALJ's determination that Plaintiff is not disabled under the Social Security Act.[4] *See id.*

## CONCLUSION

For the foregoing reasons, the undersigned finds the decision of the ALJ that Plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence. Accordingly, the Commissioner's decision is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this Order and Opinion and, thereafter, to close the file. Each party shall bear its own costs.

**DONE AND ORDERED** at Jacksonville, Florida this 16th day of July, 2012.

Copies to all counsel of record

THOMAS E. MORRIS
United States Magistrate Judge